IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| RACEDAY CENTER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | NO. 2:11-CV-17 |
| v. | ) | |
| | ) | |
| RL BB FINANCIAL, LLC, *ET AL.* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on several motions: (1) plaintiff's "Motion," [Doc. 33], regarding the clarification of the appointed Receiver's duties; (2) plaintiff's "Motion To Return Funds," [Doc. 38]; (3) plaintiff's "Motion For Expedited Ruling," [Doc. 41], on the Motion To Return Funds; and (4) defendants' "Motion for Permission to File a Supplemental Brief," [Doc. 49]. Each motion will be discussed in turn below. The sum of this Court's rulings, however, is that the Order appointing the Receiver, [Doc. 20], and the Order Defining the Powers of the Receiver, [Doc. 28], do not specifically determine the ownership of the money in RaceDay Center, LLC's ("RaceDay") checking account. A determination regarding the merits of the Counterclaim is necessary in order to release such funds to either party. As such, the funds will be placed in registry of this Court until the case is fully resolved on the merits.

This Court will first summarize the facts and background before analyzing and deciding the various motions. In 2004, Branch Banking & Trust Company ("BB&T") loaned RaceDay money to finance development of its property located adjacent to the Bristol Motor

Speedway ("BMS"). The property consists of real property and other tangibles and intangibles.[1]

RaceDay executed two promissory notes which are secured by a Tennessee Deed of Trust,[2] Security Agreement and Fixtures Filing, Assignment of Leases and Rents, and personal guarantees of the RaceDay members. The Security Agreement was executed on December 1, 2004, and it granted to BB&T a security in tangible and intangible assets, including, but not limited to, accounts receivable. The Security Agreement was amended twice, and the liens granted by the Security Agreement were perfected by a UCC-1 Financing Statement recorded in the office of the Tennessee Secretary of State.[3]

Also, on December 1, 2004, RaceDay executed the Assignment of Leases and Rents. It was also amended twice. It gave BB&T a security interest in all rents and profits from the leases and rental agreements on the property. It also permits the defendants to collect such rents.[4]

In 2007, RaceDay experienced financial difficulties and was unable to pay all the amounts due on the Notes. The last payment was made on March 17, 2010. After attempts to settle the claim, BB&T sold the Notes to RL BB Financial, LLC ("RL BB"). Then, RL BB executed a Limited Power of Attorney in favor of Rialto Capital Advisors of New York, LLC ("Rialto").

---

[1] The property is primarily used two weeks out of the year when races are held at BMS in March and August. A substantial portion of RaceDay's income is generated during this time from rents and leases.

[2] The Original Deed of Trust was executed on December 1, 2004, and then modified two times thereafter. This Court will refer to the Original Deed of Trust, as modified, as "Deed of Trust."

[3] It does not appear that RaceDay disputes the Security Agreement and its perfection as to BB&T. There is a dispute, however, as to any assignment of such rights to RL BB Financial, LLC and Rialto Capital Advisors of New York, LLC.

[4] Again, the plaintiff does not appear to dispute this fact as to BB&T.

-2-

RaceDay is still currently in default.[5]

RaceDay filed suit for injunctive relief on January 21, 2011. It seeks to enjoin the threatened foreclosure of RaceDay's property.[6] It also seeks a "final adjudication of the rights of RaceDay Center declaring that the Property is free and clear of any lien purporting to secure the Notes or arise from the Deed of Trust." [Doc. 1-1, page 16]. The defendants filed a counterclaim. It asserts a breach of contract claim, and seeks the appointment of a receiver and certain powers to be given that receiver.

Prior to a foreclosure sale, and prior to the resolution of the case on the merits, the defendants moved separately to appoint a receiver, [Doc. 12]. This Court granted that request on March 2, 2011, [Doc. 20]. In addition, the Court entered an Order Defining the Powers of Receiver on March 8, 2011, [Doc. 28]. The Receiver, pursuant to the Court's Order, began managing the property and did so from the entry of the Order until the receivership expired. The Order also stated in paragraph six, "The Receiver is authorized to utilize the funds in the Receivership Accounts for the preservation, operation and maintenance of the Property. Any excess sums shall be maintained by the Receiver in a federally insured account until further Order of the Court." [Doc. 28, page 5].

On March 9, 2011, the plaintiff filed a Notice with the Court, [Doc. 29]. The Notice states that the plaintiff presented the Receiver a cashier's check in the amount of $53,127.92. This represented the entire amount of RaceDay's bank account net of an uncleared check for $60,000.00

---

[5]Once more, the plaintiff does not dispute this fact. Actually, in the plaintiff's Complaint for Injunctive Relief, it states that RL BB "purchased the Notes with the knowledge that they were overdue."

[6]The property was sold at a foreclosure sale on March 14, 2011.

to RaceDay's attorneys, Merchant & Gould. The check was dated February 23, 2011.[7] The Notice also stated that those funds were forwarded to Merchant & Gould for deposit into its IOLTA account and that it covers legal expenses owed.

A foreclosure sale took place on March 14, 2011, and RL BB was the successful bidder. Immediately after the sale, RaceDay's in-house counsel demanded that the Receiver return the remaining cash balance of RaceDay's bank account. On March 15, 2011, the Receiver forwarded the demand notice to RL BB. RaceDay sent another demand that same day. The Receiver thus far has followed this Court's previous Order and has not released these funds. *See* [Doc. 28, ¶ 6].

Also, on March 14, 2011, the plaintiff filed a "Motion," [Doc. 33], with this Court. The motion asks the Court "to clarify the duties and responsibilities of the parties and of the Receiver." Specifically, it asks for clarification in the following ways:

> 1. That the Court has not awarded the funds in RaceDay's bank account to Defendant RL BB Financial, LLC;
>
> 2. That RaceDay is not required to stop payment on checks written prior to March 8, 2011, or otherwise cause such checks to be dishonored; and
>
> 3. That the Receiver is not empowered to stop payment on checks drawn on RaceDay's bank account.

The defendants have responded and argue that the profits, rents and accounts of RaceDay's have actually been defendants' properties since the execution of the Deed of Trust. They further argue that the transfer of the $60,000.00 amounts to a fraudulent transfer pursuant to Tennessee Code

---

[7]This same day this Court entered an Order, [Doc. 17], requiring RaceDay to respond to defendants' Motion to Appoint Receiver.

-4-

Annotated section 66-3-305(a)(1). In reply, the plaintiff argues that RL BB erroneously argues that it does not seek prejudgment attachment to its bank account. Further, it argues that RL BB is seeking to expand the scope of the Receivership.

On March 18, 2011, the plaintiff filed two motions: (1) "Motion To Return Funds," [Doc. 38], seeking the return of all funds in its bank account; and (2) "Motion For Expedited Ruling," [Doc. 41], on the Motion To Return Funds. The same reasons are essentially asserted and, in addition, the plaintiff claims it needs the funds to pay taxes that are due. The defendants again rely on the Security Agreement in arguing that RaceDay is not entitled to the funds, and they assert there is no urgency. First, they state that the taxes have been paid by the Receiver with the exception of a small amount which resulted from a disparity. Second, they argue there is no urgency because RaceDay has failed to pay said taxes for years past.

Finally, on March 31, 2011, the defendants filed a "Motion for Permission to File a Supplemental Brief," [Doc. 49], regarding the allegation by RaceDay that BB&T never assigned the Security Agreement to RL BB. The proposed supplemental brief was attached as an exhibit.

The Court can dispose of the last two motions mentioned rather quickly. This Court finds no urgency in ruling on the Motion to Expedite for the majority of the taxes were paid by the Receiver. More importantly, RaceDay does not dispute that it was behind on paying said taxes for the previous years. That motion, [Doc. 41], is **DENIED**. Next, the supplemental brief merely pointed the Court to information already contained in the record and to a case. This Court is capable of combing the record and conducting research on the issue. The brief is unnecessary, and that motion, [Doc. 49], is also **DENIED**, for this is not a development which occurred after the final brief was filed. *See* E.D. TN. LR7.1(d).

-5-

Case 2:11-cv-00017 Document 64 Filed 12/05/11 Page 5 of 7 PageID #: 1093

Now, the Court will address the Motion for clarification, [Doc. 33], and the Motion To Return Funds, [Doc. 38], in conjunction. Initially, this Court notes that neither side relied heavily, if at all, on case law or statutes. The defendants did, however, rely on the documents contained in the record, namely the Deed of Trust and the Security Agreement. Nonetheless, the plaintiff is correct in that the Order Defining Powers Of Receiver, [Doc. 28], did not make a determination as to the ownership of RaceDay's bank accounts. This Court merely appointed the Receiver to collect rents and manage the property at issue pending the foreclosure sale. The Order did not require RaceDay to stop payment on checks written prior to March 8, 2011, or cause any such checks to be dishonored. Also, the Order did not allow the Receiver to stop payment on any checks drawn on RaceDay's bank account. Therefore, the Motion for clarification is **GRANTED**.

Nevertheless, just because the Receiver does not have these powers does not mean that RaceDay is automatically entitled to pay the $60,000.00 to Merchant & Gould or that it is entitled to the remaining balance in the bank account. Such a determination would require this Court to address the merits of the remaining issues in the case, especially the breach of contract counterclaim.

As stated many times, it does not appear from the record in this case that the plaintiff disputes that BB&T has a perfected security interest in the plaintiff's profits, rents and accounts, which would include it bank account. The plaintiff does, however, dispute that BB&T assigned these rights to RL BB. To the contrary, the Verified Counter-Complaint, [Doc. 8], states that BB&T assigned to RL BB "the loan documents described on Schedule A attached hereto, and all other documents executed in connection with the loan evidenced by such documents."

All of this considered, the defendants are essentially asking this Court to decide the

-6-

Case 2:11-cv-00017   Document 64   Filed 12/05/11   Page 6 of 7   PageID #: 1094

remaining issues in this case on the merits via deciding the Motion To Return Funds. This Court holds that such a decision would be inappropriate and premature at this juncture. Such a decision is more appropriate for a motion for summary judgment in which all the issues remaining in the case are squarely before the Court. The parties are welcome to file such motions at any point, especially considering that this case can likely be decided based on the paper record.

In the meantime, because the merits of the case must be fully addressed before this Court can determine who is entitled to what funds, the plaintiff's Motion To Return Funds, [Doc. 38], is **DENIED**. It is further **ORDERED** that the Receiver, Richard F. Ray, pay the remaining funds into the registry of this Court. In addition, it is **ORDERED** that Merchant & Gould shall pay the $60,000.00 into the registry of this Court. The total sum shall be held in a government insured interest bearing account until further order of this Court. Upon further order, namely a decision by this Court on the merits of the remaining claims, then this Court will order the release of those funds to the appropriate party. Lastly, the Clerk is **DIRECTED** to set the matter for a Scheduling Conference via telephone to schedule the trial date and any necessary deadlines.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE