UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| RACEDAY CENTER, LLC | ) | |
| | ) | |
| V. | ) | NO. 2:11-CV-17 |
| | ) | |
| RL BB FINANCIAL, LLC, *ET AL* | ) | |

REPORT AND RECOMMENDATION

The plaintiff has filed a Motion for Summary Judgment [Doc. 159] with regards to the counterclaim of RL BB Financial, LLC ("RL BB") seeking judgment on the promissory notes which are the subject of the suit. The Motion has been referred to the United States Magistrate Judge [Doc. 194] for a report and recommendation.

At issue is the applicability to the counterclaim of the Tennessee Collection Service Act ("the Act"), T.C.A. § 62-20-101, *et seq*, and if it does apply, the ramifications for this action.

As an initial matter, the plaintiff failed to follow the requirement of the scheduling order in this case [Doc. 122] which states "[a]ny motion for summary judgment filed pursuant to Rule 56, Federal Rules of Civil Procedure, must be accompanied by a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record." *Id.*, pg. 3. The purpose of this requirement is to alleviate the need for the Court to scour the record in a case to determine what a fact *is*, and whether it is in dispute. For future reference, this is not acceptable practice before this Court, and it could well result in a motion for summary judgment being denied. However,

the *minutia* of the facts do not play a determinative role in deciding the issue presented in the Motion. This ultimate issue is whether the Tennessee Collection Service Act, T.C.A. § 62-20-102 ("the Act"), applies to the activities of counter-plaintiff RL BB Financial, LLC ("RL BB") in attempting to collect the debt allegedly owed by plaintiff Raceday Center, LLC ("Raceday"), and if so, what is the effect of the statute upon the counter-claim?

Beginning in 2004, Raceday obtained various large loans from Branch Banking & Trust Company ("BB&T"). These loans eventually went into default when Raceday experienced financial difficulties. BB&T commenced foreclosure proceedings through an attorney. On September 30, 2010, BB&T agreed to sell numerous loans, including the subject loans involving Raceday, to Lennar Pacific Properties, Inc. Most of the notes, including those at issue in this suit, were distressed. When assignments of the notes were made, they were actually assigned by BB&T to RL BB. RL BB continued to seek to foreclosure with the same attorney utilized by BB&T.

Neither RL BB, nor its affiliated companies Lennar Pacific Properties, Inc., Lennar Corporation and Rialto Capital Advisors, are licenced under the Act by the Tennessee Collection Service Board.

Plaintiff's argument is that RL BB and co-defendant Rialto are "collection services" under the Act. Because of this status, plaintiff asserts that they were required to obtain licences prior to engaging in collection of the amounts due on the Raceday notes. Their failure to obtain licenses prior to seeking recovery, says plaintiff, prohibits their filing suit to collect the debts. Plaintiff also asserts that the purported assignments do not comply with the Act and are "ineffective."

§ 62-20-102(3) defines "collection service" in relevant part as follows:

(3) "Collection service" means any person that engages in, or attempts to engage in, the collection of delinquent accounts, bills or other forms of indebtedness irrespective of whether the person engaging in or attempting to engage in collection activity has received the indebtedness by assignment or whether the indebtedness was purchased by the person engaging in, or attempting to engage in, the collection activity. "Collection service" includes, but is not limited to:

\*\*\*\*

(D) Any person who engages in the solicitation of claims or judgments for the purpose of collecting or attempting to collect claims or judgments or who solicits the purchase of claims or judgments for the purpose of collecting or attempting to collect claims or judgments by engaging in or attempting to engage in collection activity relative to claims or judgments.

Plaintiff asserts that these defendants purchased the Raceday notes when they were "delinquent accounts," for the purpose of collecting or attempting to collect on them by engaging in "collection activity," such as the foreclosure which occurred here and by the filing of the counterclaim. Plaintiff asserts that the Act required these defendants to be licenced by the state as a collection service prior to undertaking any collection activity, including the counterclaim, relying upon § 62-20-105(a) of the Act, which states:

(a) No person shall commence, conduct or operate any collection service business in this state unless the person holds a valid collection service license issued by the board under this chapter or prior state law.

Plaintiff points out that § 62-20-123 states that the commission of a willful violation of the Act is a Class C misdemeanor.

Plaintiff also argues that "the alleged assignment of the notes and related loan documents" to these defendants does not comply with § 52-20-127(a)(3) of the Act, which states in pertinent part:

Prerequisites to assignment of accounts – Commencement of litigation –

3

> Application of payments – (a) A collection service holding a valid license under this chapter may take assignment of accounts, bills, notes or other indebtedness held by another person or entity for the purpose of billing, collecting or filing suit in the collection service licensee's own name, as the real party in interest, if all the following requirements have been met:
>
> \*\*\*\*
>
> (3) The assignment was manifested by a written agreement stating the effective date of the assignment and the consideration paid or given, if any, for the assignment. The written agreement must also disclose that the collection service licensee may, for purposes of litigation, consolidate the assigned account, bill, note or other indebtedness with those of other creditors against the individual debtor or codebtors….

As to this second argument, that the assignments do not comport with this requirement of the Act, this section only applies to collection services holding a "valid licence." There is no dispute that these defendants are not holders of valid licences. If they were, then this second argument would be *the* argument. This section is inapplicable for this reason. If the defendants are not required to be licensed under the Act, then the assignments by which they took ownership of the indebtedness do not have to follow the requirements of this section. The *only* viable issue in this Motion is whether these defendants were required to be licenced, and whether their failure to obtain a licence deprives them of the right to pursue their counterclaim.

Defendants assert that RL BB and Rialto are not "collection services" within the meaning of the Act, and were not and are not required to obtain a lincense to collect the indebtedness. Also, in any event, they argue that there is no private right of action available under the Act.

With respect to the first argument, that the Act does not apply to "real estate investment companies" such as these defendants, they assert that a reading of the entire Act

4

shows that they are not engaged in collection services. They point to various provisions [Doc. 173, pgs. 6 and 7] which they claim shows that the act was intended to apply only to traditional collection agencies, which buy distressed loans at a discount and try to collect more than they paid for them so they might turn a profit.

Perhaps those entities, some of which have used harassing and nefarious methods to collect the sums due by expending the least amount of effort, were the impetus for the legislation. However, the width of the brush utilized by the Tennessee legislature in defining collection services does not, in the opinion of this Court, exclude larger and more sophisticated collectors of debt from its coverage. If an entity engages in "collection of delinquent accounts," whether or not the entity received it "by assignment," it is engaged in "collection service business" under the Act unless some exemption in the Act applies. These defendants did not just acquire real estate as an investment, but filed a counterclaim to collect on the notes secured by real property.

Whether the Act applies to a holder of indebtedness who is merely attempting to collect on a debt which it now owns, but did not prior to the account becoming delinquent, has been answered by District Judge J. Ronnie Greer in *King v. Midland Funding LLC*, No. 2:11-cv-120 (E.D.Tenn. 2012) [Doc. 15]. Judge Greer held "the definition of collection service clearly includes an entity...' which purchases due accounts and then attempts to collect on those accounts.'" He was quoting *Tenn. Op. Atty. Gen., No. 97-131,* 1997 WL 654201 at * 2.

Defendants point to a letter from the Tennessee Collection Service Board, which states that the "Board Chairman determined that in the event 'the Company' has no clients and is

5

not soliciting accounts in Tennessee, 'the Company' is not subject to the jurisdiction of the Board and therefore, will not need to be licenced in Tennessee." [Doc. 173, Ex. C]. In *King, supra*, there was a similar letter from the Board which said that "'[t]he filing of a lawsuit by a debt buyer in state court in an attempt to collect a purchased debt' does not change the status of a debt buyer from 'passive' to 'active' and require the buyer's compliance with the..." Act. Judge Greer noted the deference due to such an interpretation, and found that the defendant in that case was a "passive" debt buyer. However, the Court ultimately held that "while the Court appreciates the deference the Board's interpretation of the statute is entitled to, its interpretation...appears to conflict with the plaint language of the statute." *Id*, at 13.

The defendants assert that, even if the language of § 102(c) of the Act might otherwise define them as a "collection service," they are exempt under § 103(2) which exempts "attorneys at law" from the Act. In furtherance of this position, the defendants attached a "clarification statement" from the State Collection Service Board which says

> It is currently the opinion of the Tennessee Collection Sevice Board that entities who purchase judgments or other forms of indebtedness will be deemed a 'collection service' if they collect or attempt to collect the debt or judgment subsequent to their purchase of the debt or judgment. However, entities who purchase debt or judgments in the manner in the manner described above but who do not collect or attempt to collect the purchased debt or judgment, but rather assign collection activity relative to the purchased debt to a licensed collection agency or a licensed attorney or law firm shall not be deemed to be a 'collection service.'

[Doc. 173, Exhibit D]. Defendants then state "RL BB and Rialto have not violated the (Act) because RL BB and Rialto assigned any action to collect RaceDay's debt to law firms and attorneys." [Doc. 173, pg. 9].

No legal "person," such as these LLCs, except for "natural" persons who can

represent themselves, can be represented in a legal proceeding *other than* by a licenced attorney. Merely hiring an attorney when that is a legal necessity attendant to filing suit will not insulate a business otherwise obligated to obtain a license from the requirement of doing so. Indeed, no "entity" would ever be required to be licensed if all it had to do was to employ an attorney. § 103(2) merely says that attorneys at law engaging in collection matters have to also hold a license as a collection service.

Finally, defendants argue that RaceDay has no "private right of action" under the Act, but that only the Board itself may enforce its provisions. However, the plaintiff is not asserting a cause of action against the defendants for violating the Act. Instead, they are raising a defense against the counterclaim. Filing the counterclaim without the required license is a violation of the Act for the reasons set forth above. Courts sitting in various other states with similar statutes have forbade entities not following the requirements of those statutes from maintaining suits to collect on the debt. *See, Centurion Capital Corp. v. Druce,* 828 NYS2d 851 (Civ. Ct. City of New York, 2006); *Bradshaw v. Hilco Receivables, LLC*, 76 F. Supp. 2d 719, 728 (D. Md. 2011); and *Commercial Service of Perry, Inc. v. Fitzgerald,* 856 P.2d. 58 (Colo. App. 1993).

Here, the Board may choose not to take any enforcement action. But a suit brought in violation of the Act is a "collection activity" prohibited by the Act. Defendants' argument is akin to one that only the Board of Professional Responsibility can challenge a person without a law license from engaging in the practice of law.

The Act could easily have excluded these defendants from its requirements. An excellent moral argument could be made that it *should* have. However, the plain language

7

of the statute defines these defendants as unlicensed entities engaging in the "collection service business." It is therefore respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 159] be GRANTED.[1]

        Respectfully submitted:

          s/ Dennis H. Inman
          United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).